## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ANNE GLENN WELTNER, FRANCYS JOHNSON, and LAURA REGISTER,**<br><br>　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**BRAD RAFFENSPERGER, SECRETARY OF STATE, STATE OF GEORGIA,**<br><br>　　　　　**Defendant.** | **Civil Action File No.** |

## COMPLAINT

Plaintiffs Anne Glenn Weltner, Francys Johnson, and Laura Register bring this civil rights action under 42 U.S.C. § 1983 for prospective injunctive relief against the State of Georgia's Secretary of State, Brad Raffensperger, in his official capacity:

### INTRODUCTION AND SUMMARY

1.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of

representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  The

right to vote is a "fundamental political right" that is "preservative of all rights."

*Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).

2.

"It is fundamentally unfair and constitutionally impermissible for public

officials to disenfranchise voters in violation of state law so that they may fill the

seats of government through the power of appointment.  We therefore hold that

such action violates the due process guarantees of the fourteenth amendment."

*Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir. 1981).

3.

The Georgia Constitution provides that all Justices to the Supreme Court

"shall" be elected on a nonpartisan basis for a term of six years.  Ga. Const. Art.

VI, Sec. VII, Par. I(a).   Justice Keith R. Blackwell's six-year term ends at the end

of this year and the nonpartisan election for his successor was scheduled to go

forward on May 19, 2020.  Secretary Raffensperger, however, cancelled the

election, purportedly because Justice Blackwell's notification that he intended to

resign on November 18, 2020 created a "vacancy" allowing Governor Kemp to

appoint Justice Blackwell's successor, and the term of the appointed successor

would extend to January 1, 2023. As explained below, however, Governor Kemp's power to appoint Justice Blackwell's successor has not been triggered because there is no vacancy created by any resignation: Justice Blackwell continues to occupy his seat on the Supreme Court and his resignation (which is not effective until November 18, 2020) has not created a vacancy that the Governor has the power to fill. Accordingly, under Georgia law, the cancellation of the election is a violation of State law. As explained in Count I, below, a violation of state law that disenfranchises voters is actionable under 42 U.S.C. § 1983 as a violation of the due process guarantees of the Fourteenth Amendment.

Plaintiffs' claims, however, are not dependent upon a finding that Secretary Raffensperger has violated Georgia law because, if Georgia law allows the cancellation of the election under these circumstances, the resulting disenfranchisement of Georgia voters plainly violates the United States Constitution because it serves no legitimate purpose. (*See* Count II, *supra*).

Plaintiffs therefore seek an order requiring Secretary Raffensperger to take all steps necessary to conduct the nonpartisan general election previously set and noticed for the position of Justice of the Supreme Court in the seat currently occupied by Justice Blackwell.

## JURISDICTION AND VENUE

4.

This Court has subject-matter jurisdiction over each of the claims raised in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1343 (jurisdiction over civil rights actions), § 1367 (supplemental jurisdiction), § 2201 (jurisdiction to grant declaratory relief) and § 2202 (jurisdiction to grant relief ancillary to declaratory judgment).

5.

Venue lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) because some of the offices of the Defendant are in Fulton County and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

## PLAINTIFFS

6.

Plaintiff Anne Glenn Weltner ("Weltner") is a registered elector of the State of Georgia and a resident of Fulton County.  Weltner intends to vote in each of the upcoming elections.

7.

Plaintiff Francys Johnson ("Johnson") is a registered elector of the State of Georgia and a resident of Bulloch County.  Johnson intends to vote in each of the upcoming elections.

8.

Plaintiff Laura Register ("Register") is a registered elector of the State of Georgia and a resident of Grady County.  Register intends to vote in each of the upcoming elections.

**DEFENDANTS**

9.

Defendant Brad Raffensperger is sued for prospective declaratory and injunctive relief in his official capacity as the Secretary of State of Georgia.

10.

Secretary Raffensperger is a state official subject to suit in his official capacity because his office "imbues him with the responsibility to enforce the law or laws at issue in the suit," *Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir. 2011), specifically the election laws in the State of Georgia.

## FACTS

### 11.

The Constitution of the State of Georgia provides that "All Justices of the Supreme Court and the Judges of the Court of Appeals shall be elected on a nonpartisan bases for a term of six years."  Ga. Const. Art. VI, Sec. VII, Par. I(a). The Constitution further provides that "[w]hen any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy."  Ga. Const. Art. V, Sec. II, Par. VIII(a).  The Constitution further provides that "[a]n appointee to an elective office shall serve until a successor is duly selected and qualified and until January 1 of the year following the next general election which is more than six months after such person's appointment."

### 12.

Justice Keith R. Blackwell currently serves as Associate Justice of the Supreme Court of Georgia.  His current term began on January 1, 2015 and ends on December 31, 2020.

13.

The non-partisan general election for Justice Blackwell's position on the Supreme Court of Georgia was scheduled by Secretary Raffensperger for May 19, 2020.

14.

On February 26, 2020, Justice Blackwell sent a letter to Governor Brian Kemp stating that he would "conclude" his "judicial service at the end of the August Term of the Supreme Court, a date sufficiently distant to avoid – in light of the imminent retirement of Justice Robert Benham – the disruption in the important work of the Court."  Justice Blackwell stated: "Please accept my resignation from the Supreme Court, effective November 18, 2020."

15.

On the same day, February 26, 2020, Governor Kemp wrote a letter to Justice Blackwell stating: "Thank you for taking the time to apprise me of your resignation, effective November 18, 2020.  Your resignation as Justice of the Supreme Court of Georgia is hereby accepted, and I wish you all the best."

16.

Though the Georgia Constitution states that "[w]hen any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy," Governor Kemp did not "promptly fill such vacancy," because, obviously, there was no vacancy to fill.  Indeed, as Justice Blackwell stated in his letter to Governor Kemp, Justice Blackwell intended to continue "his judicial service until the end of the August Term of the Supreme Court."

17.

Had Justice Blackwell actually resigned and vacated his position on the Supreme Court, and had Governor Kemp "promptly" appointed his successor, then Justice Blackwell's position would not be open for the general nonpartisan election on May 19, 2020 because the term of the Governor's appointee on the Supreme Court would last until January 1, 2023.

18.

Though there had been no actual resignation, no vacatur of any position, and no appointment by the Governor, Secretary Raffensperger nevertheless cancelled the election for Justice Blackwell's position on the Georgia Supreme Court.

19.

At least two candidates for the Georgia Supreme Court, John Barrow and

Elizabeth Beskin, timely tendered applications, required notices, and the

qualification fees for Justice Blackwell's seat.  At Secretary Raffensperger's

direction, however, employees at the Secretary of State's office declined to accept

the tendered documents and fees.

20.

Had Secretary Raffensperger not cancelled the election for Justice

Blackwell's seat, Plaintiffs would have voted in the May 19, 2020 general election

for their choice to be his successor.  Plaintiffs intend to vote in the election for his

successor should such election be reinstated.  The cancellation of the election for

Justice Blackwell's seat caused Plaintiffs actual injury by depriving them of their

right to vote.

## COUNT I: FUNDAMENTAL RIGHT TO VOTE

### 42 U.S.C. § 1983

**Violation of State Law - Infringement of the Fundamental Right to Vote in
Violation of the Fourteenth Amendment's Guarantee of Due Process**

21.

Plaintiffs incorporate and reallege each of the foregoing paragraphs.

Page 9

22.

"It is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment." *Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir. 1981).

23.

The Georgia Constitution mandates that Justice of the Georgia Supreme Court "shall be elected on a nonpartisan bases for a term of six years." Ga. Const. Art. VI, Sec. VII, Par. I(a).

24.

Secretary Raffensperger has the affirmative duty under the Georgia Constitution to hold the election for Justice Blackwell's office on May 19, 2020.

25.

The only circumstance in which Secretary Raffensperger would be authorized by law to not hold an election for Justice Blackwell's position on May 19, 2020 would be if the Governor lawfully exercised his power of appointment to fill a vacancy and the Governor's appointee assumed the office, thus ending Justice Blackwell's expiring term and beginning the new Justice's term.

26.

Under the Georgia Constitution, the Governor's power to appoint a Justice of the Georgia Supreme Court is triggered when there is a vacancy on the Georgia Supreme Court.  Ga. Const. Art. V, Sec. II, Par. VIII(a).

27.

If there is no vacancy on the Georgia Supreme Court, the Governor has no power to appoint a Justice of the Georgia Supreme Court and, unless there is an appointment to the Supreme Court, Secretary Raffensperger must hold an election for that position on the Supreme Court every six years.

28.

The only resignations that give the Governor the power to appoint a Justice of the Supreme Court are resignations creating a vacancy.  Ga. Const. Art. V, Sec. II, Par. VIII(a).

29.

Thus, whether Justice Blackwell's resignation is deemed effective immediately because it was accepted by the Governor (notwithstanding Justice Blackwell's statement that it is effective November 18, 2020), or deemed effective on the date that Justice Blackwell's letter says it is effective,  the resignation is

irrelevant for purposes of the Governor's appointment because it was not a resignation that created a vacancy.  Ga. Const. Art. V, Sec. II, Par. VIII(a).

30.

Georgia law does not give the Secretary the authority to deem an occupied seat on the Georgia Supreme Court vacant.  To call an occupied seat vacant is to confound the meaning of both "occupied" and "vacant."

31.

Moreover, the only vacancy that gives the Governor the power to appoint a Justice of the Supreme Court is a vacancy that may be filled "promptly."

32.

Thus, even if Justice Blackwell's resignation could be deemed to create a vacancy, it is not a vacancy that gives the Governor the power to appoint a Justice of the Supreme Court because it is not a vacancy that may be filled promptly because Justice Blackwell still occupies the position and intends to occupy the position until November 18, 2020.

33.

Further still, even a vacancy that could be filled promptly does not excuse Secretary Raffensperger from holding an election for Justice Blackwell's position

unless, prior to that election, the Governor exercises his appointment power to appoint a Justice of the Supreme Court to fill that vacancy and his appointee assumes the position.

34.

The Governor has not appointed a Justice to fill the vacancy created by Justice Blackwell's resignation and no Justice has assumed the position.

35.

For all the foregoing reasons, Secretary Raffensperger's failure to hold an election for Justice Blackwell's position is in violation of state law.

36.

It is a violation of the due process clause of the Fourteenth Amendment for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment.  *Duncan v. Poythress,* 657 F.2d 691, 704 (5th Cir. 1981).

37.

Secretary Raffensperger's violation of state law, and the United States Constitution, has caused Plaintiffs actual injury by depriving them of their fundamental right to vote and to have their vote counted.

38.

Plaintiffs are accordingly entitled to preliminary and permanent injunctive relief.

## COUNT II: FUNDAMENTAL RIGHT TO VOTE

## 42 U.S.C. § 1983

### Alternative Claim - State Law Unconstitutional - Infringement of the Fundamental Right to Vote in Violation of the Fourteenth Amendment's Guarantee of Due Process

39.

Plaintiffs incorporate and reallege each of the foregoing paragraphs.

40.

In the alternative, if Georgia law is not violated by Secretary Raffensperger's failure to hold an election for Justice Blackwell's position on the Georgia Supreme Court, that Georgia law, and Secretary Raffensperger's actions thereunder, violate the United States Constitution.

41.

The United States Constitution does not require that state justices be elected. Once the State decides that justices are to be elected, however, the State may not invidiously, arbitrarily, or unreasonably disenfranchise voters.

42.

"A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interest put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi,* 504 U.S. 428, 438 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780 (1983)).

43.

When the rights of voters are subjected to "severe" restrictions, the regulation must be "'narrowly drawn to advance a state interest of compelling importance.'" *Burdick,* 504 U.S. at 434 (quoting *Norman v. Reed,* 502 U.S. 279, 289 (1992)).

44.

Secretary Raffensperger's cancellation of the election for Justice Blackwell's position on the Georgia Supreme Court is an absolute restriction on the Plaintiffs' right to vote.

45.

This restriction on Plaintiffs' right to vote does not advance any legitimate state interest, much less a state interest of compelling importance.

46.

The State may have a legitimate interest in allowing the Governor to appoint a Justice to fill an actual vacancy in the Georgia Supreme Court created by a bona fide resignation by a sitting Justice. If a new Justice is actually appointed, the State may also have an interest in allowing the appointed Justice to serve longer than the unexpired term of the vacating justice.

47.

If there is no actual vacancy to fill, however, the State has no interest, much less a compelling interest, in filling that vacancy. Further, if there is no Justice appointed to fill the (non-existent) vacancy, there is no interest, much less a compelling interest, to extend the term of the vacating Justice.

48.

Thus, the only purpose served by cancelling an election when there is no actual vacancy is to avoid an election – that is, to disenfranchise voters.

49.

The disenfranchisement of voters is not a legitimate State interest.

50.

The argument may be advanced that Secretary Raffensperger's' actions do not severely restrict the Plaintiffs' right to vote because they would be disenfranchised anyway if the election goes forward on May 19, 2020, and (a) Justice Blackwell, having earned his pension and with just several weeks left in his six year term, does indeed resign and vacate his office on November 18, 2020; and (b) Governor Kemp makes the decision to override the voter's choice for Justice of the Supreme Court – voters to whom he will be held accountable – just so he can make his own appointment which appointment will, this argument goes, nullify the election.

51.

This argument is too speculative on the facts and too deficient on the law. On the facts, if the voters were not disenfranchised initially, and the election took place, Justice Blackwell and Governor Kemp would be well within their rights to rescind or modify Justice Blackwell's resignation to coincide with the end of his term, eliminating any opportunity or need for an executive appointment.   Justice

Blackwell and Governor Kemp could very well decide that, whatever their personal interest may be, "'for the good of the whole'"[1]  it is better to respect the choice of the people.  Further, even if Justice Blackwell insisted on ending his tenure within days of the end of his term, Governor Kemp would easily be within his power and discretion to not appoint a successor with so few days left in the term, either because such an appointment would serve no genuine state interest or because by doing so he would have to face the political cost of attempting to take from the voters their elected choice.

52.

The argument is also defective as a matter of law, for at least two reasons. First, the argument assumes that the Governor's power to fill a vacancy applies after the vacating Justice's successor has been elected.  Second, the constitutionality of the disenfranchisement of voters on May 19, 2020 cannot depend upon whether the State, by other means, can disenfranchise voters, particularly if such subsequent disenfranchisement also serves no legitimate, much

---

[1] *See Georgia Dep't of Human Res. v. Sistrunk*, 249 Ga. 543, 544 (1982) ("'All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. Public officers are the trustees and servants of the people, and at all times amenable to them.'") (quoting  Art. I, Sec. I, Par. I of the Constitution of 1877)).

less compelling, state interest. "The need for exacting judicial scrutiny of statutes distributing the franchise is undiminished simply because, under a different statutory scheme, the offices subject to election might have been filled through appointment." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 628–29 (1969).

53.

In sum, the only purpose served by Justice Blackwell's advance notice of his anticipated resignation, and the Governor's immediate acceptance of that advance notice, was to allow Justice Blackwell to serve for all practical purposes his entire term, but at the same time give the Governor and the Secretary of State an argument (as thin as it is) to cover an otherwise naked exercise of executive power to appoint a Justice that the people of this State are entitled to elect. Georgia law should not allow this but, if it does, since its only purpose is to disenfranchise voters, it violates the United States Constitution.

54.

Plaintiffs are accordingly entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1.  Issue an order directing Secretary Raffensperger to take all steps necessary to conduct the nonpartisan general election previously set and noticed for the position of Justice of the Supreme Court in the seat currently occupied by Justice Blackwell;

2.  Issue any declaratory relief necessary;

3.  Retain jurisdiction to ensure Secretary Raffensperger's ongoing compliance with the Orders entered by the Court in this case;

4.  Grant Plaintiffs their reasonable attorney's fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 1988; and

5. Grant Plaintiffs such other relief as the Court deems just and proper.

This 31st day of March, 2020.

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
bbrown@brucepbrownlaw.com
BRUCE P. BROWN LAW LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700
*Attorney for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Complaint has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown
Georgia Bar No. 064460
BRUCE P. BROWN LAW LLC
Attorney for Plaintiffs
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 881-0700