# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANNE GLENN WELTNER, FRANCYS JOHNSON, and LAURA REGISTER, | |
| Plaintiffs, | Civil Action File No. |
| v. | 1:20-cv-01407-ODE |
| BRAD RAFFENSPERGER, SECRETARY OF STATE, STATE OF GEORGIA, | |
| Defendant. | |

## NON-PARTY JOHN BARROW'S
## REPLY IN SUPPORT OF HIS MOTION TO INTERVENE

Georgia's new judge-made state law that authorizes the Governor and a sitting Supreme Court Justice to nullify a judicial election by timing the effective date of that Justice's resignation to occur *after* the election for that Justice's office violates the constitutional rights of voters and candidates such as John Barrow.

This new judge-made state law has no boundaries, no guidelines, no standards, no procedures, and no public, statutory, or judicial check. This new judge-made state law "taketh away" what Georgia's constitution expressly "giveth" in a manner that violates Barrow's First Amendment and due process rights as set forth in and protected by the United States Constitution. This new state law denied Barrow the right to qualify and run for a seat on the Supreme

Court, to be filled by election, the right to speak about the issues pertinent to that office and in favor of his election thereto, and the right to vote for himself as a candidate, or for any candidate he might choose to vote for.

The Secretary's argument that Barrow could have and should have raised that claim in his state court action seeking a writ of mandamus compelling the Secretary to conduct the election is specious. The new law that deprives Barrow of the rights identified above did not exist until May 14, 2020, when the Supreme Court issued its opinion in *Barrow v. Raffensperger*, S20A1029, 2020 WL 2485188 (Ga. 2020). The recognition of this undeniable reality defeats the Secretary's arguments about timeliness, res judicata and collateral estoppel, and the *Rooker-Feldman* Doctrine.[1]

This new state law that provides that Justices "shall be elected" only if the Governor and the sitting Justice decide to allow the results of the election to stand is both unconstitutional on its face and as applied here to deny John Barrow his First Amendment and due process rights.

---

[1] This new judge-made state law vests the three Justices who did not recuse (Melton, Nahmias, and Warren) with enormous and unconstitutional power over any election concerning their own offices and shows clearly why each should have recused. Based on their ruling, each of these Justices now knows – and any potential challenger now knows – that they can nullify any challenge by timing the effective date of a resignation after their election similar to what Justice Blackwell and Governor Kemp did here.

## I. Barrow's Claims Are Not Precluded

Try as he might to justify a patently unconstitutional law, the Secretary can only support his arguments to exclude Barrow from this case by fundamentally mischaracterizing Barrow's state court and federal claims. The prior state action sought only a writ of mandamus because the asserted basis for cancelling the election (i.e., that there was a current vacancy) was utterly contrary to existing law as of March 4, 2020. Here, Barrow challenges the new judge-made law that allows for the ex post nullification of a constitutionally mandated election, which law did not exist until the Supreme Court declared it on May 14, 2020. A law cannot be challenged before it is announced. Barrow filed this Motion to Intervene approximately two weeks after that opinion was issued. There should be no question that this motion is timely.

### A. Barrow's Claims in the Complaint in Intervention

Contrary to the Secretary's repeated mischaracterization of Barrow's claims, Barrow's Complaint in Intervention asserts that the Georgia Supreme Court's newly announced law violates his First Amendment right to free political speech and expression, and his Fourteenth Amendment right to procedural due process. These claims are separate and distinct from his state case, could not have been brought in that case, and require entirely distinct facts and elements from the request for mandamus brought in state court.

1. *First Amendment*

The Supreme Court has stated "the *First Amendment* has its fullest and most urgent application precisely to the conduct of campaigns for political office." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191-92 (2014) (quotations and citation omitted). "Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day." *Brown v. Hartlage,* 456 U.S. 45, 53 (1982). "The *First Amendment* is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us." *McCutcheon,* 572 U.S. at 203 (quotations and citation omitted).

"But when a State seeks to uphold that interest by restricting speech, the limitations on state authority imposed by the *First Amendment* are manifestly implicated." *Brown,* 456 U.S. at 51–52.  It is the court's role to "weigh the character and magnitude of the asserted injury . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Burdick,* 504 U.S. at 434, (quotations and citation omitted).  In so doing, the court should take "into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* (quotations and citation omitted).

2. *Procedural Due Process Under the Fourteenth Amendment*

The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, "only against deprivations without due process of law." *Parratt v. Taylor,* 451 U.S. 527, 537, (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31 (1986). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). "In this circuit, a [section] 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994)). As discussed below, the procedural due process claim Barrow raises is based on a state of affairs that did not exist when the state mandamus case was filed. The law which takes away Barrow's protected interest in running for office was not announced until the Court's ruling.

3. *The State and Federal Claims are Distinct*

These claims require distinct elements and proof from those at issue in the mandamus action, which alleged a clear legal duty to conduct the election. John

Barrow sought a writ of mandamus because that cancellation was unlawful under Georgia law. Barrow showed that the Secretary of State is obligated by statute and constitutional provision to hold judicial races in the non-partisan election in the year preceding the end of the term. *See* O.C.G.A. § 21-2-9, et seq. Because no legally operative action had relieved the Secretary of that duty, and no statutory or constitutional provision gave him the power to cancel an election, Barrow showed that the duty was clear. Only through the Supreme Court's opinion in *Barrow* was a legal basis for that action created, and it is that newly-found basis only announced on May 14, 2020, which violates Barrow' federal constitutional rights.

Conversely, this case involves the unconstitutional delegation of the power to nullify a popular election to the two persons with the most to gain from doing so — the Governor who wants to parlay the power to fill vacancies into the power to pack the bench with acolytes who owe him for their judicial offices and whose judicial views are vetted by him and not the voters, and the Justice who is willing to trade an election by the people for reasons and favors known only to the Governor and himself. The result is that two officials can set aside and nullify an election for the Supreme Court after the election has already happened. Such awesome and unconstrained power allows for arbitrary and capricious state action that on its face can violate the voting rights of the people of this state, and as applied here violated the right of John Barrow to run for the office of his choice,

with no mechanism or opportunity to challenge it without resort to the courts. To show this violates due process, Barrow must show that he has a protected right (the right to run for election), that the new law constitutes a state action which deprives him of that right (the top elections official cancelling that election based on the authority granted by the Supreme Court's newly announced law), and that no or inadequate process was provided to challenge the deprivation (none is provided for). None of these elements was at issue in the state mandamus action, clearly distinguishing the two claims.

## B. The *Rooker-Feldman* Doctrine Has No Application Here

The United States Supreme Court has made perfectly clear that the *Rooker-Feldman* Doctrine is narrow and intended to reserve to the Supreme Court via certiorari any federal review of state court final judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Therefore, the Supreme Court has confined the doctrine solely to, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered *before the district court proceedings commenced* and inviting district court review and rejection of those judgments." *Id.* (emphasis added). This case does not fit into those narrow confines for multiple reasons.[2]

---

[2] Yet another reason it does not apply is that these district court proceedings had already commenced prior to the termination of Barrow's state court action. *Rooker-Feldman* is a jurisdictional question, and there is no claim that this Court

This case does not implicate the concerns that undergird the doctrine. The Eleventh Circuit has stated that *Rooker-Feldman* "applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (quoting *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 n.16 (1983)). However, if the party against whom application of the doctrine is sought did not have a "reasonable opportunity to raise his federal claim in state proceedings," the doctrine does not apply. *Id*. (quoting *Powell v. Powell,* 80 F.3d 464 (11th Cir.1996)). Such is the case here.

Barrow argued in the state court that the Secretary's cancellation of the election was violative of clear state law and that mandamus should issue to require the election be held. Barrow urged the complete absence of any constitutional power or statutory authority allowing the Secretary to cancel an election based on a pre-election resignation effective post-election. The Georgia Supreme Court agreed with Barrow that the Secretary's stated basis for cancelling the election was

---

does not have jurisdiction over this suit as it was pending before the judgment was entered in *Barrow*. *See Exxon Mobil Corp.*, 544 U.S. at 292 ("When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'") (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). Because this suit was initiated prior to the termination of the state action, *Rooker-Feldman* simply does not apply. The Secretary cites no case which applies the doctrine to block intervention in an ongoing federal action, and the undersigned have found none.

legally unsound. *Barrow*, 2020 WL 2485188 at \*1-2.  But the Court went far beyond the question of when a vacancy occurs and announced a sweeping new law allowing the Governor and a sitting Justice to hold a joint veto power over any election for their office.[3]  It was not only unexpected that the Court would reach beyond the question presented, but also that it would announce a new rule of law so strikingly undemocratic and contrary to basic concepts of free elections. But that newly announced law is now the law of the State of Georgia.  Barrow does not seek any review of the propriety of that decision under state law and fully appreciates that this court cannot sit in review of the Supreme Court's ruling.

Here, however, Barrow alleges that this new law does not square with federal constitutional requisites.  The Court's announcement of new state law permitting the arbitrary and capricious nullification of an election is what Barrow challenges now.  That newly announced provision of state constitutional law violates the United States Constitution.  These claims could not have been brought in the state court action because the basis did not exist.  Such claims would have essentially sought an advisory opinion, which are not the province of state or

---

[3] To be clear, the Court's newly announced law does not necessarily stop with the office of Justice of the Supreme Court.  The reasoning behind the newly announced constitutional paradigm in Georgia applies with the same effect to all judges of the Court of Appeals and Superior Courts of Georgia, and potentially other gubernatorial appointments. *See* 1983 Ga. Const. Art. VI, Sec. VII, Paras. I-IV (describing the method for selection of Justices of the Supreme Court, Judges of the Court of Appeals, and Judges of the Superior Courts in the same manner).

federal courts. Therefore, Barrow had no opportunity whatsoever to raise his federal claim in the state proceedings.

These new federal claims are not "inextricably intertwined" with the state court judgment. Barrow does not seek to "effectively reverse the state court judgment" that mandamus cannot issue in these circumstances. *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996). Barrow does not challenge the state law determinations made in the Supreme Court's opinion, although he believes they are wrong. The federal claim here is not dependent upon the state court having wrongfully decided the issues of state law before it. A statute or rule of state constitutional law need not be "wrong" under state law to be unconstitutional.[4]

Instead, Barrow seeks recognition that a state law allowing the Governor of Georgia and a sitting Justice the unfettered discretion to nullify an election violates rights of a prospective candidate under the First and Fourteenth Amendments to the United States Constitution. This is not what the *Rooker-Feldman* Doctrine is designed to foreclose. Instead, it is designed to foreclose successive litigation such as that in *Greenberg v. Zingale*, where an ex-husband ordered to pay alimony in a previous state court divorce proceeding later sued in federal court to determine the

---

[4] To the extent this constitutional challenge is "inextricably intertwined" with the state mandamus action, there was clearly no "reasonable opportunity to raise" the challenge because there it was not until the Supreme Court handed down its opinion in *Barrow v. Raffensperger* that there was any basis for this constitutional challenge. *See Powell*, 80 F.3d at 467 (quoting *Wood v. Orange County,* 715 F.2d 1543, 1547 (11th Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984)).

constitutionality of Florida's alimony provisions. 138 F. App'x 197 (11th Cir. 2005). The ex-husband had the opportunity to raise the constitutional challenge in the state divorce proceedings, and therefore could not bring a new suit in federal court after they concluded. *Id.*at 201. Such is not the case here where the challenged provision <u>did not exist</u> until the conclusion of the state proceedings.

### C. Barrow's Claims are not Precluded

The law Barrow challenges here did not exist prior to the Supreme Court's ruling, and therefore Petitioner could not have brought the claim in the state case. The Secretary cannot establish the elements necessary to show that the claims raised in the Complaint in Intervention are barred by *res judicata*. Specifically, he cannot show that "both cases [] involve the same causes of action." *See Lobo v. Celebrity Cruises*, 704 F.3d 882, 892 (11th Cir. 2013). Whether two cases raise "the same causes of action" depends on whether the claims arise from the "same nucleus of operative fact, or is based upon the same factual predicate." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). These claims do not arise from the same "nucleus of operative fact" because the most important fact, the newly announced state law which causes the constitutional violation, did not exist.

This is not merely a different legal theory to contest the same issue, it is an entirely new claim created by the announcement of new law by the Supreme Court, which new law violates the United States Constitution. The claim could not have

11

been brought until after the Court announced the law because the law being challenged did not exist.

The Secretary's argument on *res judicata* and claim preclusion requires Barrow to chase invisible rabbits down non-existent rabbit holes rather than addressing the live issues generated by the existing facts and then-applicable law. Under the Secretary's argument here, Barrow had to bring claims at the beginning of the state case that were hypothetical or unripe, or lose all opportunity to challenge a patently unconstitutional new law. Essentially, heads: the Secretary wins, tails: Barrow loses. *Res judicata* does not preclude new claims that could never have been raised previously. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001) ("*[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed* or claims actually asserted by supplemental pleadings or otherwise in the earlier action.") (quoting *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354 (11th Cir.1998)) (emphasis in original). The Secretary's argument is expressly refuted by Eleventh Circuit precedent.

**II. Barrow's Claims are Timely**

The Secretary's timeliness argument fails for the same reason: the claims Barrow asserts in this action were not ripe until the Supreme Court announced the new law. Despite the Secretary's protestations regarding the prejudicial effect of

12

allowing Barrow to intervene in this action at this time, the question is not merely prejudice in the abstract, but prejudice caused by a delay. The factors considered in determining timeliness are:

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;] 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017). It is clear from the first two elements that if there is no delay, there is no prejudice. Inconvenience to the original parties does not defeat an interested party's entitlement to intervene as of right under Rule 24(a) so long as the intervenor brings his motion in a timely manner.

As discussed above, the claims brought in Barrow's Complaint in Intervention did not exist until the Georgia Supreme Court announced the new reading of the Georgia Constitution. The Secretary's arguments are premised on the idea that Barrow's claims ripened when the Secretary cancelled the election, but this misconstrues the claims and the timeline. Barrow's motion is timely.

### III. Barrow Has Unique Interests to Protect

In arguing that Barrow "brings nothing to the table" in this action, the Secretary merely disregards the distinct interests that Barrow seeks to vindicate through this case as described in the Brief in Support of the Motion to Intervene. Without rehashing all of those reasons, Barrow's unique interests include the right to seek public office and the right to speak in favor of his bid for public office. *See Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1152 (11th Cir. 2009) ("Citizens also have a constitutionally protected right to run for public office."). The Secretary contends that the rights of voters and candidates are "essentially interchangeable," yet the cases cited unequivocally do not stand for that proposition. For example, in *Grizzle v. Kemp*, the Eleventh Circuit addressed the proper standard for considering an infringement on a candidate's right to run and discussed that the rights of candidates to run are *intertwined* with the rights of voters to freely associate with and vote for the candidates of their choice. 634 F.3d 1314, 321 (11th Cir. 2011). This is not the same as saying that "voters and candidates are essentially interchangeable," as the Secretary suggests. Though the rights are intertwined in that infringement upon a candidate's right to run necessarily has some "correlative effect on voters," this is not the same as saying a voter will always adequately represent the unique interests of a candidate in a particular case.

As discussed above, the claims and interests addressed by Barrow's Complaint in Intervention are qualitatively and quantitatively distinct from those presented by the Weltner Plaintiffs. While *some* of the relief requested is similar, Barrow has unique and distinct interests of a candidate to present to the Court. Barrow claims violations of free speech and procedural due process rights, which the Weltner Plaintiffs do not. These claims and the unique interests of a candidate include considerations of whether to run for office and what office to run for, requirements for qualifying for office and establishing campaign committees, and interests in political speech. None of these considerations or interests applies to the Weltner Plaintiffs, and thus, they are not currently represented in this case. Barrow's claims are not mere differences in the manner that he would "go about making these arguments," they are different arguments altogether and different rights asserted. *See* Def.'s Resp. at 20. The elements of those claims and proof needed to sustain them are also distinct from the Weltner Plaintiffs' claims.

## CONCLUSION

For the reasons describe above, and stated in Barrow's Brief in Support of Motion to Intervene, the Motion should be granted.

Respectfully submitted, this 22nd day of June, 2020.

/s/ *Wade H. Tomlinson, III*
WADE H. TOMLINSON, III
Georgia Bar No. 714605
CHARLES W. BYRD
Georgia Bar No. 100850
GEORGE W. DARDEN, III
Georgia Bar No. 205400
MICHAEL J. MOORE
Georgia Bar No. 520109
ELIZABETH S. WHITE
Georgia Bar No. 258844
MICHAEL P. MORRILL
Georgia Bar No. 545410
**Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C.**
3391 Peachtree Road, NE, Suite 300
P.O. Box 19337 (31126-1337)
Atlanta, GA  30326
(404) 523-7706
triptomlinson@pmkm.com
chuckbyrd@pmkm.com
buddydarden@pmkm.com
michaelmoore@pmkm.com
lizwhite@pmkm.com
mikemorrill@pmkm.com
efile@pmkm.com

S. LESTER TATE, III
Georgia Bar No. 698835
**Akin & Tate**
P.O. Box 878
Cartersville, GA 30120
(770) 382-0780
lester@akin-tate.com

*Attorneys for Non-Party John Barrow*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ANNE GLENN WELTNER, FRANCYS JOHNSON, and LAURA REGISTER,<br><br>　　　　Plaintiffs,<br>v.<br><br>BRAD RAFFENSPERGER, SECRETARY OF STATE, STATE OF GEORGIA,<br><br>　　　　Defendant. | Civil Action File No.<br><br>1:20-cv-01407-ODE |

**<u>Local Rule 7.1 D Certification</u>**

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1B.

Respectfully submitted this 22nd day of June, 2020.

　　　　　　　　　　　　　　　　　　　　*/s/ Wade H. Tomlinson, III*
　　　　　　　　　　　　　　　　　　　　WADE H. TOMLINSON, III
　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 714605

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ANNE GLENN WELTNER, FRANCYS JOHNSON, and LAURA REGISTER,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, SECRETARY OF STATE, STATE OF GEORGIA,<br><br>    Defendant. | Civil Action File No.<br><br>1:20-cv-01407-ODE |

**CERTIFICATE OF SERVICE**

This certifies that on the 22nd day of June, 2020, I did electronically file the foregoing NON-PARTY JOHN BARROW'S REPLY IN SUPPORT OF HIS MOTION TO INTERVENE with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted this 22nd day of June, 2020.

*/s/ Wade H. Tomlinson, III*
WADE H. TOMLINSON, III
**Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C.**
3391 Peachtree Road, NE, Suite 300
P.O. Box 19337 (31126-1337)
Atlanta, GA  30326
(404) 523-7706
triptomlinson@pmkm.com

18