IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANNE GLENN WELTNER, FRANCYS
JOHNSON, and LAURA REGISTER,

          Plaintiffs,

v.

BRAD RAFFENSPERGER, SECRETARY
OF STATE, STATE OF GEORGIA,

          Defendant.

CIVIL ACTION NO.
1:20-cv-01407-ODE

ORDER

This matter is before the Court on non-party John Barrow's Motion to Intervene [Doc. 18]. For the reasons provided below, John Barrow's Motion to Intervene is DENIED.

## I.  INTRODUCTION

### A.  Factual Background and Procedural History

Justice Keith R. Blackwell currently serves as an Associate Justice of the Supreme Court of Georgia [Doc. 1 at 6 ¶ 12]. His current term began on January 1, 2015 and was scheduled to end on December 31, 2020 [Id.]. However, on February 26, 2020, Justice Blackwell sent a letter to Governor Brian Kemp tendering his resignation, effective November 18, 2020 [Id. at 7 ¶ 14]. Governor Kemp accepted Justice Blackwell's resignation that same day [Id. at 7 ¶ 15].

Defendant Brad Raffensperger ("Secretary Raffensperger" or "Defendant") is the Georgia Secretary of State [Id. at 5 ¶ 9]. Secretary Raffensperger had originally scheduled the nonpartisan general election for Justice Blackwell's position on the Supreme Court for May 19, 2020 [Id. at 7 ¶ 13]. However, on March 1,

2020, Governor Kemp notified Secretary Raffensperger that he intended to fill Justice Blackwell's office by appointment on the ground that Justice Blackwell's resignation, once accepted, created a vacancy that could be filled by appointment. Following that notice, Secretary Raffensperger cancelled candidate qualifying for the May 19, 2020 election and directed the employees at the Secretary of State's office to publicize that decision and decline to accept any tendered documents and fees [Id. at 9 ¶ 19].

The plaintiffs in this action are Anne Glenn Weltner ("Weltner"), Francys Johnson ("Johnson"), and Laura Register ("Register") (collectively, "Plaintiffs") [Id. at 4-5 ¶¶ 6-8]. Plaintiffs are registered electors of the state of Georgia [Id.]. Weltner resides in Fulton County [Id. at 4 ¶ 6], Johnson resides in Bulloch County [Id. at 5 ¶ 7], and Register resides in Grady County [Id. at 5 ¶ 8]. Had Secretary Raffensperger not cancelled the election for Justice Blackwell's seat, Plaintiffs claim they would have voted in the May 19, 2020 election--now scheduled for June 9, 2020--for their choice of successor [Id. at 9 ¶ 20].

Plaintiffs filed this lawsuit under 42 U.S.C. § 1983 on March 31, 2020. Plaintiffs argue that the cancellation of the election for Justice Blackwell's seat violated Federal law under two alternative theories. Plaintiffs first argue that Secretary Raffensperger's action violates state law, and therefore the Due Process Clause of the Fourteenth Amendment of the United States Constitution, under Duncan v. Poythress, 657 F.2d 691 (5th Cir.

1981).[1]  Plaintiffs alternatively argue that even if Georgia law allowed Secretary Raffensperger's actions, the law itself violates the Due Process Clause because there is no legitimate, much less a compelling, justification for the state's deprivation of their right to vote.

### B.  Related State Court Actions

John Barrow ("Barrow") is an attorney and former member of the United States House of Representatives [Doc. 18-1 at 3].  He is a citizen of Georgia and claims to have met all of the qualification requirements to seek election to the Georgia Supreme Court [Id.].  Barrow attempted to qualify for the May 19, 2020 election for Justice Blackwell's seat by timely tendering an application, the required notice, and the qualification fees [Doc. 1 at 9 ¶ 19].  However, Secretary Raffensperger's staff refused to accept his application.  After being turned away by the Secretary's office, Barrow, along with potential-candidate Elizabeth Beskin ("Beskin"), filed a petition for mandamus in the Fulton County Superior Court, seeking to compel the Secretary to hold the election for Justice Blackwell's seat and to allow them to qualify for the election.  Barrow and Beskin argued that because Justice Blackwell is not leaving office until November 18, 2020, there is currently no vacancy that the Governor can fill by appointment before the May 19, 2020 election, and therefore Secretary Raffensperger had no discretion to cancel a required election.  Beskin additionally brought a claim under 42 U.S.C. §

---

[1]Decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981 are binding on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

1983, arguing that the Secretary's decision violated her right and privilege to qualify as a candidate for office and to vote for the candidate of her choice under the United States Constitution.

The Fulton County Superior Court denied both petitions on March 16, 2020, finding that Secretary Raffensperger could not be compelled by mandamus to hold the May 19, 2020 election for Justice Blackwell's seat.   See Barrow v. Raffensperger, Civil Action No. 2020CV334031; Beskin v. Raffensperger, Civil Action No. 2020CV333983.  The court summarized its decision as follows:

> This Court finds that, under the express language of the Georgia Constitution and O.C.G.A. § 45-5-1,[2] a vacancy existed for Justice Blackwell's seat as of February 26, 2020 and once Governor Kemp notified the Secretary of State of Governor Kemp's decision to fill the seat via appointment, Secretary Raffensperger no longer was under a statutory legal duty to hold qualifications for Justice Blackwell's seat.

Barrow, Civil Action No. 2020CV334031, at 10.   The court also denied Beskin's federal claim.

The Supreme Court of Georgia affirmed the lower court's decision on May 14, 2020.  See Barrow v. Raffensperger, S20A1029 (Ga. 2020); Beskin v. Raffensperger, S20A1031 (Ga. 2020).   The Court disagreed with the lower court's reasoning but nonetheless concluded that Secretary Raffensperger could not be compelled by mandamus to hold the May 19, 2020 election for Justice Blackwell's Seat.   The Court found that:

---

[2] O.C.G.A. § 45-5-1 states that offices of the state are vacated: (1) by the death of the incumbent; (2) by resignation, when accepted; (3) by decision of a competent tribunal declaring the office vacant; (4) by incapacity; (5) by the incumbent ceasing to be a resident of the State, or of the county, circuit, or district for which he was elected; (6) by failing to obtain commission or give bond; or (7) by abandoning the office and ceasing to perform its duties.  O.C.G.A. § 45-5-1(a)(1)-(7).

4

[u]nder the Georgia Constitution and this Court's precedent, a vacancy in a public office must exist before the Governor can fill that office by appointment, and a vacancy exists only when the office is unoccupied by an incumbent. Because Justice Blackwell continues to occupy his office, the trial court erred in concluding that his office is presently vacant; accordingly, the Governor's appointment power has not yet arisen.

Unlike earlier Georgia Constitutions, however, our current Constitution, which took effect in 1983, clearly provides that when an incumbent Justice vacates his office before the end of his term, his existing term of office is eliminated, and the successor Justice appointed by the Governor serves a new, shortened term that is unrelated to the previous incumbent's term. Consequently, even if Justice Blackwell's office is not vacant yet, if his accepted resignation will undoubtedly create a vacancy in his office on November 18, his term of office will go with him, and the next six-year term of his office that would begin on January 1, 2021, will never exist. The next election will be in 2022, for the next term of the *appointed* Justice's office; the May 19, 2020, election for the next term of Justice Blackwell's office will be legally meaningless (as well as misleading to voters and the public); and the Secretary cannot be compelled by mandamus to conduct a legal nugatory election.

<u>Barrow v. Raffensperger</u>, S20A1029 (Ga. 2020); <u>Beskin v. Raffensperger</u>, S20A1031 (Ga. 2020).

To summarize, when Justice Blackwell unequivocally resigned from office, and Governor Kemp unequivocally accepted that resignation, Justice Blackwell's resignation could not be withdrawn, and his vacancy--though prospective--became inevitable. At that point, Justice Blackwell's unexpired term disappeared with him, and "any election to fill the next term of [Justice Blackwell's] office bec[ame] nugatory, as there w[ould] be no such term of office for the candidate who wins the election to serve." <u>Id.</u> at 34. Because the Secretary of State has no obligation to hold a legally meaningless election, the Court found that Secretary Raffensperger's cancellation of the May 19, 2020

5

election for Justice Blackwell's seat did not violate state election law. The Court likewise rejected Beskin's federal claims, finding they were derivative of her claim that the Secretary violated state election law.

On May 28, 2020, after the Georgia Supreme Court issued its decision, John Barrow filed a Motion to Intervene in this action [Doc. 17]. The state filed a response in opposition on June 11, 2020 [Doc. 22] to which Barrow replied on June 22, 2020 [Doc. 27].

**II.   DISCUSSION**

Under Federal Rule of Civil Procedure 24, a party may seek intervention as a matter of right under Rule 24(a)(2) or with permission from the district court under Rule 24(b)(1)(B). Fed. R. Civ. P. 24; <u>Worlds v. Dep't of Health & Rehabilitative Servs., State of Fla.</u>, 929 F.2d 591, 593 (11th Cir. 1991). Barrow's motion seeks intervention under either method.

**A.   Futility**

Secretary Raffensperger first argues that Barrow should not be allowed to intervene because his claims are futile. Specifically, he argues that Barrow's claims are barred by claim preclusion--or res judicata--and the Rooker-Feldman doctrine.

The doctrine of claim preclusion "bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties." <u>Lobo v. Celebrity Cruises, Inc.</u>, 704 F.3d 882, 892 (11th Cir. 2013); <u>Jaffree v. Wallace</u>, 837 F.2d 1461, 1466 (11th Cir. 1988); <u>Jordan v. State</u>, 336 Ga. App. 345, 350 (2016).

The state argues that the test for whether a claim arises out of the same nucleus of operative fact is "whether the same facts

6

are involved in both cases, so that the present claim *could* have been effectively litigated with the prior one." In re Piper Aircraft Corp., 244 F.3d 1289, 1301 (11th Cir. 2001) (citation omitted) (emphasis added).    Therefore, claim preclusion would apply "not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact." NAACP v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990); Cont'l Cas. Co. v. HealthPrime, Inc., CIVIL ACTION FILE NO. 1:07-CV-2512-BBM, 2009 WL 10665024, at *10 (N.D. Ga. June 18, 2009) ("Alternative legal theories that were not asserted in an initial action, however, may still be barred by claim preclusion . . . because claim preclusion does not apply exclusively to those theories and claims actually raised in the prior proceeding but also encompasses all claims that could have been raised from the same nucleus of operative facts.") (internal quotation marks and citation omitted). Under this test, Secretary Raffensperger argues, the federal claims Barrow seeks to assert are barred by claim preclusion because he *could* have brought them in state court.

However, a federal court exercising federal question jurisdiction "asked to give res judicata effect to a state court judgment . . . must apply the 'res judicata principles of the law of the state whose decision is set up as a bar to further litigation.'" Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1985) (citing Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983)) (emphasis omitted); see also Harrell v. Bank of Am., N.A., No. 19-14913, 2020 WL 2214114, at *3 (11th Cir. May 7, 2020) ("When a federal district

7

court applies res judicata to a prior state-court decision, it applies the res judicata principles of the law of that state."); Curling v. Raffensperger, 403 F. Supp. 3d 1311, 1324 (N.D. Ga. 2019); Fields v. Sarasota-Manatee Airport Auth., 755 F. Supp. 377, 379 (M.D. Fla. 1991). Because Secretary Raffensperger asks the Court to give res judicata effect to a decision from the Georgia Supreme Court, the Court therefore looks not to federal law, but the res judicata principles of Georgia law.

Under Georgia law, the doctrine of res judicata or claim preclusion "is aimed at fostering the finality of litigation, but it must also be balanced against the right of litigants to be heard in court." Curling, 483 F. Supp. 3d at 1325; Anderson Oil Co., Inc. v. Benton Oil Co., 246 Ga. 304, 306 (1980) (noting res judicata analysis "involves a fact determination in balancing the policy toward ending litigation and due process"). The doctrine is codified at O.C.G.A. § 9-12-40, which states that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or under which the rules of law might have been put in issue in the cause wherein the judgment was rendered until he judgment is reversed or set aside." O.C.G.A. § 9-12-40; see also Gunby v. Simon, 277 Ga. 698, 699 (2004). Therefore, Georgia courts consider: (1) the identity of the parties or their privies; (2) the identity of the causes of action; and (3) previous adjudication on the merits by a court of competent jurisdiction. Brown & Williamson Tobacco Corp. v. Gault, 280 Ga. 420, 421 (2006); Jordan, 336 Ga. App. at 350; Smith v. AirTouch Cellular of Ga., Inc., 244 Ga. App. 71, 73 (2000). Barrow's state court

proceedings involved the same parties and clearly resulted an adjudication on the merits by a court of competent jurisdiction. The only element before the Court is therefore whether both cases involve the same cause of action.

The fact that the subject matter of different lawsuits may be factually similar is insufficient to be the same "cause" within the meaning of O.C.G.A. § 9-12-40. Gunby, 277 Ga. at 699; ALR Oglethorpe, LLC v. Henderson, 336 Ga. App. 739, 742 (2016). Rather, for the doctrine of claim preclusion or res judicata to apply, "the cause of action in each suit must be identical." Morrison v. Morrison, 284 Ga. 112, 115 (2008); see also Gunby, 277 Ga. at 699; Haley v. Regions Bank, 277 Ga. 85, 91 (2003); ALR Oglethorpe, 336 Ga. App. at 742. "Mere identity of subject matter without identify of cause of action is not sufficient." Life & Cas. Ins. Co. of Tenn. v. Webb, 112 Ga. App. 344, 348 (1965).

In Morrison v. Morrison, William Lee Morrison, Jr. ("the decedent") gave his son, Ralph Morrison ("the appellee"), a power of attorney in 1986 and executed wills in 1988, 1995, and 1998. Morrison, 284 Ga. at 112. In 2003, the decedent made notes of potential changes on a copy of the 1998 will, and, two weeks before he died in June 2004, mailed them to an attorney. Id. Prior to the decedent's death, the appellee discovered a copy of those notes along with a handwritten message addressed to him which stated: "If anything happens to me before I am able to write my new will, please see and abide by the changes I have inked in on this . . . 1998 will . . . I know you will do as I ask of you . . . Please do as I ask/legal or not." Id. After the decedent's death, the appellee propounded the 1998 will in probate court.

9

Id.   A caveat was filed by appellant Alexander Morrison and supported by appellant W. Lee Morrison, III ("the appellants"), both of whom are also the decedent's sons.   Id.   The caveat was ultimately rejected and the will was admitted to probate.   Id.

While that case was pending, the appellants brought suit in superior court against the appellee claiming breach of fiduciary trust, constructive trust, intentional interference with a gift, and fraud.   Id.   The superior court granted summary judgment in favor of the appellee, holding that the non-fraud claims were barred by res judicata.   Id.   The Supreme Court of Georgia reversed, finding that "the non-fraud claims and the caveat to the petition for probate [we]re not identical causes of action."   Id. at 116.   Therefore, the Court concluded that the appellants' claims were not barred by claim preclusion.

Here, the causes of action—though premised on the same set of facts—are similarly distinct.   In the state court proceedings, Barrow sought only mandamus relief based on an assertion that Secretary Raffensperger's actions violated state law.   In this action, Barrow seeks to assert the same two federal claims brought by Plaintiffs: (1) a claim that Secretary Raffensperger's actions violated state law and therefore their federal constitutional rights under Duncan v. Poythress, 657 F.2d 691 (5th Cir. 1981);[3] and (2) an alternative claim that if state law authorized Secretary Raffensperger's actions, Georgia law violates the Due Process Clause of the federal constitution.   Because Barrow did

---

[3]Decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981 are binding on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

not assert these federal claims before the state court, but instead only sought mandamus relief based on state law, they are not barred by claim preclusion.

Secretary Raffensperger's argument that Barrow's claims are barred by the Rooker-Feldman doctrine fares no better. Under the Rooker-Feldman doctrine, "federal district courts cannot review state court final judgments because that task is reserved for state appellate courts." Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009); see also D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); Rooker v. Fid. Trust Co., 263 U.S. 413, 415 (1923). The Rooker-Feldman doctrine applies to federal cases that are "inextricably intertwined" with a state court judgment such that (1) the success of the claim before the federal court would effectively nullify the state-court judgment; or (2) the federal claim would succeed only to the extent that the state court wrongly decided the issues. See Casale, 558 F.3d at 1260.

As previously discussed, Barrow asserts two claims. Count I is a claim that Secretary Raffensperger's actions violated state law and therefore their federal constitutional rights under Duncan v. Poythress, 657 F.2d 691 (5th Cir. 1981). Count II is an alternative claim that if state law authorized Secretary Raffensperger's actions, Georgia law violates the Due Process Clause of the federal constitution. Neither Barrow nor Beskin brought Count II in their state court actions. Therefore, this Court's determination of Count II is not an inappropriate review of a state court's judgment because the Georgia state courts have

11

not heard this issue.  Secretary Raffensperger is correct that Beskin asserted Count I in her state court action and that this claim has already been decided by the Georgia Supreme Court. However, the Court finds that Secretary Raffensperger's Motion to Dismiss [Doc. 20], in which he asks the Court to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(6) in light of the Georgia Supreme Court's ruling, is the more appropriate vehicle for addressing the merits of this argument.  To summarize, the Court finds that neither of Barrow's claims are barred by claim preclusion and that Count II is not barred by the Rooker-Feldman doctrine.[4]  Because Secretary Raffensperger has not shown that Barrow's complaint is wholly futile, the Court turns to the issue of intervention.

### B.   Intervention as a Matter of Right

Under Federal Rule of Civil Procedure 24(a)(2), the Court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  A party seeking to intervene under Rule 24(a)(2) must demonstrate that:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that

---

[4] The Court makes no determination as to whether the Rooker-Feldman doctrine bars Count I of Barrow's complaint.

interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Worlds, 929 F.2d at 593 (citing Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Secretary Raffensperger first argues that Barrow's intervention is untimely. The Court considers four factors in assessing timeliness:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019); Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel, 861 F.3d 1278, 1294 (11th Cir. 2017). "[T]imeliness depends on the circumstances of each case." Advance Local Media, 918 F.3d at 1171. However, "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact this may well be the only significant consideration when the proposed intervenor seeks intervention of right." Id. (citing McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1083 (5th Cir 1970)).

The alleged wrong in this case--Secretary Raffensperger's cancellation of the election for Justice Blackwell's seat-- occurred in February of 2020. Plaintiffs filed their lawsuit on March 31, 2020. Barrow then filed his Motion to Intervene on May

13

28, 2020, nearly two months after Plaintiffs filed their complaint. Secretary Raffensperger argues that this two-month delay would impair both Plaintiffs' and Defendant's ability to obtain a prompt ruling on pending motions. See Athens Lumber Co., Inc. v. Fed. Election Comm'n, 690 F.2d 1364, 1367 (11th Cir. 1982) (affirming denial of intervention "[b]ecause the introduction of additional parties inevitably delays proceedings").

Barrow argues in response that his motion is timely because the federal claims he now seeks to assert have only just become ripe. According to Barrow, he could not bring the federal claims until the Georgia Supreme Court issued its decision regarding Barrow's state-law claim. The Court disagrees. Beskin's assertion of a § 1983 claim alongside her request for mandamus relief in the parallel state court proceedings undermines any argument Barrow may make suggesting the federal claims only just became ripe. The Plaintiffs in this action likewise filed nearly identical federal claims prior to the Georgia Supreme Court's resolution of Barrow's state-law claim. Like Beskin and Plaintiffs did before him, Barrow could have asserted the federal claims at issue in this matter when he filed his writ for mandamus.

In assessing the factors above, the Court finds Barrow's motion untimely. Barrow waited nearly two months after Plaintiffs filed their lawsuit to move to intervene and offers no viable justification for his delay. This determination is bolstered by the time sensitivity of this case. In their May 28, 2020 filing [Doc. 17], Plaintiffs requested that the election for Justice Blackwell's seat be reinstated on the date of the general

14

election--November, 3, 2020.  Absentee ballots must be mailed no later than forty-five days from any election, O.C.G.A. § 21-2-384(a)(2), meaning they must be mailed no later than September 18, 2020 for a November 3, 2020 election.  However, before ballots must be mailed, candidates must be qualified and the ballots must be created, printed, reviewed, and verified.  If the Court allowed Barrow to intervene, additional filings may prejudice both Plaintiffs and Secretary Raffensperger by complicating and protracting the litigation.  Moreover, Barrow would suffer no prejudice if denied the opportunity to intervene.  If Plaintiffs succeed in this lawsuit, Barrow would be granted both the opportunity to vote and run for Justice Blackwell's seat.

Even if Barrow's request was timely, Barrow's interest in this lawsuit is adequately represented by the existing parties.[5] Although Barrow asserts that his right to run for Justice Blackwell seat is distinct from Plaintiffs' right to vote for Justice Blackwell's seat, voters and candidates are essentially interchangeable for purposes of analyzing the constitutionality of election laws.  See Anderson v. Celebrezze, 460 U.S. 780, 786 (1983) ("[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.") (internal quotation marks and citation omitted); Grizzle v. Kemp, 634 F.3d 1314, 1321 (11th Cir. 2011).

---

[5] The party attempting to intervene has the burden of showing that the existing parties cannot adequately represent his interests.  Salvors, 861 F.3d at 1295.

The right to candidacy is linked to the right to vote. Randall v. Scott, 610 F.3d 701, 711 (11th Cir. 2010). In fact, in Randall v. Scott, the United States Court of Appeals for the Eleventh Circuit concluded that with respect to one's first amendment right to candidacy, "the constitutional-right-versus the state's-interests analysis [is] no different for a restriction on candidacy than a restriction on candidate support." Id. at 713. Here, Barrow and Plaintiffs have the same ultimate goal: to reinstate the election for Justice Blackwell's seat. The Court therefore finds that Barrow is not entitled to intervention as a matter of right under Rule 24(a)(2).

C.   **Permissive Intervention**

Under Rule 24(b)(1)(B), the Court may allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision to allow permissive intervention lies within the discretion of the district court. Brother of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 524 (1947); Athens Lumber, 690 F.2d at 1367.

Both intervention as a matter of right under Rule 24(a) and permissive intervention under 24(b) must be timely filed. Advance Local Media, 918 F.3d at 1171. For the reasons provided above, the Court finds Barrow's motion untimely. However, even if Barrow's request was timely, the Court finds Barrow's intervention unnecessary. As previously discussed, Plaintiffs are more than capable of adequately representing Barrow's interests in this matter. Although Barrow styles his request as seeking the right to candidacy rather than the right to vote, Plaintiffs' and

16

Barrow's goals are one and the same: to reinstate the election for Justice Blackwell's seat.   The Court therefore declines to exercise its discretion to authorize intervention under Rule 24(b)(1)(B).

**III. CONCLUSION**

For the reasons provided above, the Court DENIES Barrow's Motion to Intervene [Doc. 18].


SO ORDERED, this __26__ day of June, 2020.


ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

17